**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

JOEL LEOVALDO DOMINGUEZ,   :     CIV. NO. 24-2743 (RMB)
                           :
           Petitioner     :         **OPINION**
                           :
           v.               :
                           :
WARDEN THOMPSON,       :
FCI FORT DIX,             :
                           :
           Respondents   :
_____

RENÉE MARIE BUMB, Chief United States District Judge

This matter comes before the Court upon Petitioner Joel Leovaldo Dominguez's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Dkt. No. 1), Petitioner's emergency motion for a preliminary injunction (Mot. for P.I., Dkt. No. 3), Respondent's answer in opposition to habeas and preliminary injunctive relief (Answer, Dkt. No. 6), Petitioner's reply brief (Reply Brief, Dkt. No. 8), Respondent's supplemental answer (Dkt. No. 9),[1] and Petitioner's reply to Respondent's supplemental answer (Suppl. Reply Brief, Dkt. No. 10.) Petitioner is a prisoner confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix.") He seeks credit against his federal sentence for time served

---

[1] On April 12, 2024, this Court ordered Respondent to submit a supplemental brief addressing Petitioner's argument under U.S.S.G. § 5G1.3(c) and to submit Petitioner's federal sentencing transcript.

concurrently on a state court sentence, which would lead to his earlier release from prison.  For the reasons discussed below, the Court will deny the habeas petition on the merits and dismiss Petitioner's motion for preliminary injunctive relief as moot.

## I.    BACKGROUND

Petitioner was arrested in Pennsylvania on May 17, 2023, for providing false identification to law enforcement officers.  (Answer, Declaration of Stacy Fanello ("Fanello Decl.") ¶ 3 and Attach. 1, Dkt. No. 6-1 at 9.)  As a result, he was detained in Lebanon County Prison in Lebanon, Pennsylvania.  (*Id.* and Attach. 2, Dkt. No. 6-1 at 15.)  Two weeks later, on May 31, 2023, Petitioner was indicted in federal court, the Middle District of Pennsylvania, for illegal re-entry into the United States, in violation of 8 U.S.C. § 1326(a) & (b)(1), 6 U.S.C. §§ 203(3)–(4), 557.  *United States v. Leovaldo Dominguez*, Crim. No. 23-cr-139 (M.D. Pa. May 31, 2023) ("*United States v. Dominguez*"), Dkt. No. 1.[2]  On August 28, 2023, the federal court filed a writ of habeas corpus *ad prosequendum* to obtain Petitioner's appearance for sentencing.  (Answer, Fanello Decl. ¶ 4 and Attach. 2, Dkt. No. 6-1 at 15.)  On August 29, 2023, Petitioner was sentenced in federal court, the Middle District of Pennsylvania, to a twelve-month and one-day term of imprisonment, with a three-year term of supervised release.  (*Id.* ¶ 5 and Attach. 3, Dkt. No. 6-1 at 18.)  Petitioner's Judgment provides that "[i]t is the intention of the [c]ourt that this sentence be served

---

[2] See Public Access to Court Electronic Records, available at www.pacer.gov.

concurrent with any sentence that may be imposed at Lebanon County Dkt. No: 696-2023." (Fanello Decl., Attach. 3, Dkt. No. 6-1 at 18.)

Upon returning to state court on September 20, 2023, Petitioner was sentenced in the Court of Common Pleas, Lebanon County, Dkt. No. 696-2023 to a minimum term of time-served and a maximum term of one year. (*Id.* ¶ 6 and Attach. 4, Dkt. No. 6-1 at 25-27.) The state court awarded Petitioner credit for presentence time served between May 17, 2023, and September 20, 2023 (126 days), and ordered Petitioner released from state custody as of September 20, 2023. (*Id.*)

Petitioner was taken into exclusive federal custody on September 25, 2023. (*Id.* ¶ 7 and Attach. 6, Dkt. No. 6-1 at 37.) The Federal Bureau of Prison's ("BOP") Designation and Sentence Computation Center ("DSCC") calculated Petitioner's federal sentence, taking into account that the twelve-month and one-day term of imprisonment represented a downward variance, consistent with the federal court's intent that Petitioner's federal sentence run concurrent with his state sentence. (*Id.* ¶ 8 and Attach. 5, Dkt. No. 6-1 at 33.) DSCC commenced Petitioner's federal sentence on August 29, 2023—the date it was imposed. (*Id.*) DSCC did not award Petitioner prior custody credit toward his federal sentence for the time between his arrest on May 17, 2023, and his federal sentencing on August 28, 2023, because that time had already been credited toward Petitioner's state sentence. (*Id.*) DSCC

found Petitioner was not entitled to *Willis*[3] or *Kayfez*[4] credit.  (Fanello Decl. ¶ 11 and Attach. 7, Dkt. No.. 6-1 at 39-40.)  Thus, assuming Petitioner receives all good conduct time available to him, his projected release date from BOP custody is July 6, 2024.  (*Id.*)

## II.    THE PETITION, ANSWER, AND REPLY BRIEFS

Petitioner alleges BOP improperly calculated his federal sentence by failing to credit 126 days of prior custody credit for the period of time Petitioner spent in state custody between his arrest on May 17, 2023, and his state sentencing on September 20, 2023, as directed by the federal sentencing court under U.S.S.G. § 5G1.3(c). (Pet., Dkt. No. 1; Petr's Mem., Dkt. No. 1-1.)   Petitioner contends that the federal sentencing court imposed a downward variance for time served, as reflected in the Statement of Reasons.  (Petr's Mem., Dkt. No. 1-1 at 7.)  Petitioner acknowledges that the federal sentencing judge did not explicitly state that she was adjusting Petitioner's sentence under U.S.S.G. § 5G1.3(c), but it was clearly her intent to do so by specifying that his federal sentence run concurrently with a particular anticipated state sentence.  (*Id.* at 9.)

This Court ordered Respondent to file an expedited answer and a response to Petitioner's emergency motion for preliminary injunctive relief.  (Order, Dkt. No. 4.) Subsequently, the Court ordered Respondent to file a supplemental answer and

---

[3] *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971).

[4] *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993).

submit a copy of Petitioner's federal sentencing transcript.  (Text Order, Dkt. No. 7.)

Respondent contends the petition should be dismissed because Petitioner failed to exhaustion his administrative remedies before seeking habeas relief under 28 U.S.C. § 2241.  (Answer, Dkt. No. 6 at 8-10 and Declaration of Christina Clark, Dkt. No. 6-2.)  Alternatively, Respondent argues BOP properly determined Petitioner's sentence under 18 U.S.C. § 3585, and the narrow exceptions to the double counting prohibition in 18 U.S.C. § 3585(b) that were announced in *Willis, supra* n. 3 and *Kayfez, supra* n. 4.  (*Id.* at 5-8.)  In reply, Petitioner contends he is entitled to prior custody credit for 126 days of presentence custody pursuant to U.S.S.G. § 5G1.3(c) or alternatively, Respondent miscalculated his *Kayfez* credit.  (Reply Brief, Dkt. No. 5.)  Respondent, in a supplemental brief in opposition to habeas or preliminary injunctive relief, maintains that BOP's sentence calculation reflects the federal sentencing court's concurrent sentence determination under U.S.S.G. § 5G1.3(c). (Suppl. Brief, Dkt. No. 9 at 1 and Declaration of Kevin Maggio, Dkt. No. 9-1.)  In Petitioner's supplemental reply brief, he acknowledges that BOP calculated his federal sentence to give effect to the federal sentencing court's U.S.S.G. § 5G1.3(c) adjustment, but that BOP miscalculated his *Kayfez* credit by conflating an "adjustment" to a federal sentence under 18 U.S.C. § 3584 with the term "credit" in § 3585(b), resulting in the wrongful exclusion of 90 days in the *Kayfez* calculation. (Suppl. Reply Brief, Dkt. No. 10.)

## IV.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

Before a federal inmate can seek habeas relief under 28 U.S.C. § 2241, he must ordinarily exhaust his administrative remedies.  *Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  The judicially imposed exhaustion requirement serves the following purposes: 1) facilitates judicial review by allowing the appropriate agency to develop a factual record and apply its expertise; (2) conserves judicial resources by permitting agencies to grant the relief requested; and (3) fosters administrative autonomy by providing agencies the opportunity to correct their own errors.  *Moscato*, 98 F.3d at 761-62 (citations omitted).  A failure to exhaust administrative remedies "may be excused if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." *Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010) (citations omitted).

Petitioner acknowledges that he did not exhaust administrative remedies prior to filing the instant habeas petition, but he alleges a BOP staff member imposed additional exhaustion requirements, beyond those in the regulations, which delayed his ability to obtain relief, and placed him in jeopardy of remaining in prison beyond his sentence expiration.  (Petr's Mem., Dkt. No. 1-1 at 6-8.)  Petitioner's circumstances do not fit squarely within the futility exception to the exhaustion requirement.  Nonetheless, a court has discretion to excuse the failure to exhaust and reach the merits in a § 2241 habeas matter. *Ridley v. Smith*, 179 F. App'x 109, 111 (3d

Cir. 2006) (citations omitted).  Because Petitioner is not entitled to relief on the merits, the Court will not require administrative exhaustion.

**B.    Petitioner's Federal Sentencing Memorandum, Sentencing Transcript and Judgment of Conviction**

On August 11, 2023, Petitioner's counsel filed a sentencing memorandum on Petitioner's behalf in *United States v. Dominguez*, recommending a downward variance from the Guidelines range sentence for the following reasons.  Petitioner is a native of the Dominican Republic and had been removed from the United States in 2018, after serving a sentence for possessing a controlled substance in New York.  *United States v. Dominguez*, Dkt. No. 23.  On May 17, 2023, Petitioner was arrested in Lebanon County, Pennsylvania for giving a false name to police.  ICE was contacted and placed a detainer on Petitioner, who was in pretrial custody in Lebanon County, Pennsylvania.  On May 31, 2023, Petitioner was federally charged with illegal reentry under 8 U.S.C. § 1326(a).  He pled guilty to the federal charge, and his expected federal Guidelines range at that time was 15-21 months.  Petitioner's counsel requested that the sentencing court depart downward from the Guidelines range for two reasons:  (1) Petitioner had been in state pretrial custody for three months for relevant conduct, and he would spend time after expiration of his sentence in immigration custody awaiting removal; and (2) the Government could save the costs of confinement for a federal sentence by removing Petitioner from the country sooner.  Petitioner's counsel stated it was "abundantly clear that his [state criminal] conduct was relevant to his illegal re-entry and the attempt to avoid

detection for that offense under U.S.S..G. § 1B1.3(a)(1)." Thus, he argued for application of U.S.S.G. § 5G1.3(c). Petitioner's counsel requested "a sentence of three months' imprisonment concurrent with the anticipated sentence to be imposed in Lebanon County Court of Common Pleas case number CP-38-CR-0000696-2023."

Petitioner's federal sentence was imposed on August 29, 2023, by the Honorable Sylvia H. Rambo, U.S. District Judge, Middle District of Pennsylvania. (Suppl. Brief, Ex. 1, Dkt. No. 9-1.) Upon acceptance of Petitioner's guilty plea, his counsel argued for a downward variance from the guidelines range, and that the "sentence be imposed to run concurrently with the anticipated state sentence on the local charge which is relevant conduct to his federal charge." (*Id.* at 12.) The sentencing court imposed a one-year and one-day term of imprisonment, stating "[i]t is the intention of the Court that this sentence be served concurrent to any sentence that may be imposed at Lebanon County Docket No. 696-2023. (*Id.* at 14.) The Court added, "this sentence varies from the guideline range based on the Defendant's motion for a variance." (*Id.*) Furthermore, "[t]he Court should also make the following finding: Since he was not in prison, but as under Lebanon County Prison, he can no longer get any consideration for time served." (*Id.* at 16.)

### C.   BOP's Sentence Calculation

BOP, through the DSCC, commenced Petitioner's one-year and one-day federal sentence on the date of imposition. (Fanello, ¶ 8 and Attach. 6, Dkt. No. 6-1 at 35.) Petitioner did not receive any prior custody credit for May 17, 2023 through

September 20, 2023, because he was awarded presentence custody credit for those days against his state sentence.  (Fanello Decl.¶ 8 and Attach 5, Dkt. No. 6-1 at 32-34.)  The next step in calculating Petitioner's sentence was to determine whether Petitioner was entitled to prior custody credit under *Willis* or *Kayfez*, and BOP determined Petitioner was not entitled to any further credit.  (*Id.* ¶¶ 9-12 and Attach 7, Dkt. No. 6-1 at 39-40.)

### D.    Standard of Law

Petitioner's federal sentence was imposed under U.S.S.G. § 5G1.3, Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment, effective from March 15, 2022,[5] which provides:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

>> (1) the court shall adjust the sentence for any period of imprisonment already served on the

---

[5] "District courts must begin their sentencing analysis with the Guidelines in effect at the time of the offense …."  *Peugh v. United States*, 569 U.S. 530, 549 (2013).  Petitioner's federal sentence was imposed on August 29, 2023.

> undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
>
> (c) If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.
>
> (d) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3.

The BOP's calculation of a federal sentence is governed by 18 U.S.C. § 3585, which provides:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> > (1) as a result of the offense for which the sentence was imposed; or

          (2) as a result of any other charge for which the
defendant was arrested after the commission of the
offense for which the sentence was imposed;

that has not been credited against another sentence.

"Congress made clear that a defendant could not receive a double credit for his detention time." *United States v. Wilson*, 503 U.S. 329, 337 (1992).

In *Willis* and *Kayfez*,[6] the Fifth and Seventh Circuits created two narrow exceptions to 18 U.S.C. § 3585(b)'s "double-counting" prohibition. *Taccetta v. Fed. Bureau of Prisons*, 606 F. App'x 661, 664 (3d Cir. 2015). "Those rules are now applied nationwide by way of [BOP Program Statement 5880.28], which provides that a federal prisoner can receive credit from both sovereigns for a particular stretch of incarceration under a narrow set of circumstances involving the [raw] 'effective full term' ([Raw] EFT) of each sentence." *Id.* (citing P.S. 5880.28 at 1-14). "The Raw EFT for both a federal and [state] sentence is determined by adding the total length of the sentence to be served to the beginning date of the sentence[,] resulting in a full term date of sentence (Raw EFT) that does not include any time credit, e.g., presentence or prior custody time or good time." P.S. 5880.28 at 1-14.

A defendant is entitled to *Willis* credit "only if: (1) the state and federal sentences are concurrent; and (2) the state [raw] EFT is equal to or shorter than the federal [raw] EFT." *Taccetta*, 606 F. App'x at 664 (citing P.S. 5880.28 at 1-22 to 1-22A). A defendant is entitled to *Kayfez* credit "only if: (1) the state and federal

---

[6] See *supra* n. 3 and n. 4.

11

sentences are concurrent[;] (2) the state [raw] EFT is greater than the federal [raw] EFT; and (3) the state EFT, after application of qualified presentence time, is reduced to a date that is earlier than the federal [raw] EFT."  *Id.* (citing P.S. 5880.28 at 1-22B to 1-23A). *Willis* and *Kayfez* credits are intended to address situations in which "credit against a concurrent state sentence 'would not benefit the defendant except that he would be serving only one sentence instead of two concurrent ones. Crediting the disputed period against [the defendant's] federal sentence w[ould] correct the problem.'" *Id.* (quoting *Kayfez*, 993 F.2d at 1290).

### E.  Analysis

Based on Petitioner's sentencing memorandum, his sentencing transcript, and judgment, it is apparent that Petitioner received a downward variance from the 15-21-months Guidelines range on his federal sentence under U.S.S.G. § 5G1.3(c), the purpose of which was to reduce his federal sentence to achieve a sentence concurrent with his anticipated state sentence.  Thus, by imposing a shorter federal sentence than the federal court otherwise would have imposed, the sentence had the same effect on the duration of Petitioner's custody as if Petitioner received prior custody credit against his federal sentence for time served from May 17, 2026 through August 28, 2023, the day before his federal sentence began to run. *See Rashid v. Quintana*, 372 F. App'x 260, 262 (3d Cir. 2010) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed") (citation omitted).  BOP was not required to award Petitioner prior custody credit to achieve the federal sentencing court's

intended concurrent sentence, because the federal sentencing court accomplished this by a downward variance in the federal sentence.

Accordingly, BOP reviewed Petitioner's federal sentence computation to determine if he was entitled to *Willis* or *Kayfez* credit.  (Fanello Decl. ¶ 12.)  In his supplemental reply brief, Petitioner contends that when BOP determined his eligibility for *Kayfez* credit, it should not have excluded from the "qualified presentence time" the period accounted for by the federal sentencing court's downward variance, May 17, 2023 through August 28, 2023.

The BOP formula for calculating *Kayfez* credit, in situations where non-federal and federal sentences are concurrent, is to determine whether "the Raw EFT of the non-federal term is greater than the Raw EFT of the federal term, and if the non-federal Raw EFT, after application of qualified non-federal presentence time, is reduced to a date that is earlier than the Raw federal EFT, *Kayfez* credit is applied to the non-federal Raw EFT."  BOP Program Statement 5880.28, Pages 1-21 through 23.[7]  BOP defines "qualified non-federal presentence time" as:

> [t]ime spent in non-federal presentence custody from the date of the federal offense, that does not overlap any other authorized prior custody time credits, to the date the first sentence begins to run, federal or non-federal….

---

[7] Change Notice, Sentence Computation Manual-CCCA, available at www.bop.gov/policy/progstat.

*Id.*, Page 1 - 14A.  Petitioner's federal Raw EFT is August 29, 2024, and Petitioner's state Raw EFT is September 19, 2024.  (Fanello Decl., ¶ 12 and Attach. 7 at 39.)[8] Petitioner's minimum state sentence of "time served" consisted of the 126 days between Petitioner's arrest on May 17, 2023, and the imposition of his state sentence and release from state custody on September 20, 2023.  (Fanello Decl. ¶ 6 and Attach. 4 at 27.)  Petitioner's federal sentence commenced on August 29, 2023, and was ordered to run concurrent with his state sentence.  (Fanello Decl. ¶ 8 and Attach. 3 at 18.)  Petitioner's state Raw EFT is greater than his federal Raw EFT; therefore, the BOP considered how much qualified state presentence time could be applied to Petitioner's state Raw EFT.  (Fanello Decl. ¶ 11 and Attach. 7 at 40.)

To account for the federal sentencing court's downward variance by three months, BOP excluded this period from qualified non-federal presentence time.  The downward variance accounted for 90 days, the time from Petitioner's May 17, 2023 arrest through August 14, 2023.  (Fanello ¶ 11.)  Instead, BOP considered the qualified non-federal presentence time under the *Kayfez* analysis as the 14-day period between August 15, 2023 (i.e., the day after the three-month period accounted for by the downward variance) and August 28, 2023 (i.e., the day before Petitioner's federal sentence was imposed).  (*Id.* ¶ 11, Attach. 7, Dkt. No. 6-1 at 39-40.)  Application of those 14 days toward Petitioner's state Raw EFT resulted in a state Adjusted EFT of

---

[8] Based on this calculation, BOP properly determined Petitioner was not entitled to *Willis* credit because his state raw EFT is greater than his federal raw EFT.  See, e.g., *Taccetta*, 606 F. App'x 664-65.

September 5, 2024.  (*Id.* ¶ 12, Attach. 7 at 40.)  Petitioner's state Raw EFT (September 5, 2024) was greater than his federal Raw EFT (August 29, 2024). Therefore, BOP did not award Petitioner *Kayfez* credit.

By giving Petitioner a downward variance from the Guidelines range, the federal sentencing court, in effect, gave Petitioner credit for state presentence custody against his concurrent federal sentence, knowing BOP would not award such credit because it is prohibited by 18 U.S.C. § 3585(b).  Petitioner's federal Raw EFT represents the sentence intended by the federal court, one year and one day from the date his federal sentence was imposed.  This is why the federal sentencing court stated, "he can no longer get any consideration for time served."  (Suppl. Brief, Ex. 1 [federal sentencing transcript], Dkt. No. 9-1 at 16.)  If BOP were to include this period as part of qualified non-federal presentence time in calculating *Kayfez* credit, as Petitioner suggests, it would frustrate the federal sentencing court's intended sentence.  Therefore, it was not error for the BOP to exclude this period in the *Kayfez* calculation.

## V.    CONCLUSION

For the reasons set forth above, the Court denies habeas relief.  Having determined the petition on the merits, the Court dismisses Petitioner's motion for preliminary injunctive relief as moot.

An appropriate order follows.

**DATE:**  <u>**May 8, 2024**</u>

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
Chief United States District Judge